UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

IN RE:  CHRISTOPHER L. BROWN                                                   Case No. 05-39206-DOT
        ANGELA H. BROWN
        Chapter 13 Debtors

## MEMORANDUM OPINION AND ORDER

Hearing was held March 21, 2007, on the debtors' objection to the proof of claim filed after the claims bar date by HSBC Auto Finance, amending its timely proof of claim. For the reasons set forth below, the objection will be overruled. However, to avoid prejudice the court will grant the debtors their discharge following the confirmation of an amended plan as discussed below.

### Findings of Fact

Debtors Christopher and Angela Brown filed their chapter 13 petition on October 3, 2005. Their first chapter 13 plan was confirmed on December 20, 2005, proposing to pay creditor HSBC directly for the debt secured by a 2005 Nissan Quest, and unsecured creditors a payout of 34%. HSBC filed proof of claim #16 on November 9, 2005, stating a claim of $23,724.97 fully secured by the collateral, with no unsecured claim. The bar date for timely filed claims was February 21, 2006.

Debtors filed a modified plan on May 19, 2006, which proposed surrender of the vehicle to HSBC and preserved the 34% proposed payout to unsecured creditors. The plan also proposed surrender of a second vehicle to Bellwood FCU, another creditor whose initial proof of claim included a $12,225.00 secured portion, along with $703.83 unsecured. Plan section 3.B., Collateral to be surrendered, states:

> Upon confirmation of the plan, or before, the debtor will surrender his or her interest in the collateral securing the claims of the following creditors in satisfaction of the secured portion of such creditors' allowed claims. To the extent that the collateral does not satisfy such creditor's claim, the creditor may hold a non-priority, unsecured claim for a timely filed deficiency claim. The order confirming the plan shall have the effect of terminating the automatic stay as to the collateral surrendered.

This plan was confirmed on July 14, 2006, following no objections by any party and the withdrawal of the trustee's motion to dismiss that was pending prior to the filing of the modified plan.

Bellwood FCU, the secured creditor to whom the debtors' second vehicle was surrendered, filed on September 18, 2006, a proof of claim amending its prior proof of claim. The amended proof of claim acknowledged proceeds of $4,900 from the auction of the second vehicle, and the claim was thereby modified to an unsecured claim of $8,363.46. The debtors filed no objection to this amended proof of claim.

Following confirmation of the modified plan, HSBC retrieved the vehicle in late August 2006. HSBC sent notice of its intent to sell on August 31, 2006, stating that the sale would occur sometime after September 15, 2006. The vehicle was sold on November 9, 2006, for a purchase price of $10,500.00.

In the time between confirmation of the modified plan and the sale of the vehicle, debtors filed a motion to sell real property on October 18, 2006. Following no objections, the court entered an order approving the sales price of $280,000.00 on November 8, 2006. The proceeds were to be allocated to pay all liens in the approximate amount of $180,000.00; closing costs of $6,360.00; and outstanding utilities, taxes and fees of $2,626.59. The Chapter 13 Trustee was to receive $28,370.00, which would pay all unsecured creditors and other allowed claims at 100%. The remaining $61,943.41 was to be retained by the debtors. The Chapter 13 Trustee received

the funds from the sale of the real property on or about December 12, 2006.

On January 10, 2007, HSBC filed claim #24,[1] amending Claim #16. The amended proof of claim listed proceeds from the sale of $10,500.00, and repossession fees and costs of $1,990.51. The total unsecured deficiency was therefore listed as $15,215.48. As acknowledged in its brief, HSBC erroneously mis-stated the repossession fees and costs, which should have been $1,181.29, consisting of a $150.00 repo fee, $297.00 reconditioning fee, $95.00 key fee, $247.29 legal fee, and $329.00 sales fee. Therefore, the amended proof of claim should have been further amended to state an unsecured amount of $14,406.26. Following the filing of the claim, the trustee disbursed funds from the sale of real property to the unsecured creditors, including HSBC, in a distribution of approximately 65%.

Debtors filed an objection to the amended proof of claim on January 23, 2007. HSBC filed a response to the objection on February 22, 2007, and hearing was held on March 21, 2007. The court took the matter under advisement after hearing argument from debtors' counsel and counsel for HSBC.

Conclusions of Law

DEBTORS' ARGUMENT

Debtors raise several arguments in their objection to the proof of claim. First, they argue that HSBC is barred from asserting its amended Claim #24 by laches. Second, they claim that the untimely filing of Claim #24 causes undue prejudice on the debtors and all creditors who timely filed proofs of claim and amendments. Third, debtors argue that they did not receive an explanation of surplus or deficiency following disposition of the collateral, as required under state law in Virginia Code § 8.9A-616. Fourth, debtors argue that HSBC asked for unreasonable

---

[1] The claim is listed as #24 on the claims register, but in the objection and response it is referred to as claim #21.

3

repossession fees and costs, and accrued unpaid interest, without rebate for unearned interest from the date of surrender of the collateral. Finally, debtors argue that the disposition of the collateral by HSBC was not commercially reasonable in accordance with Virginia Code § 8.9A-610.

DISCUSSION

The debtors' third through fifth arguments may be readily rejected. First, the record indicates that debtors received an explanation of the deficiency following the disposition of the collateral, in that the amended proof of claim filed January 10, 2007, included each of the elements required under Va. Code § 8.9A-616: the aggregate amount of obligations secured, the amount of proceeds obtained in the auction, the aggregate amount of the obligations after deducting the amount of proceeds, the aggregate amount of expenses related to the disposition of the collateral, the amount of credits including rebates of interest that are not reflected in the aggregate amount of obligations secured, and the amount of the deficiency. This disclosure, accompanied by the detailed breakdown of costs and expenses in HSBC's response to the objection to claim, suffices to substantially comply with the requirements of Virginia state law. Second, the court does not find the revised $1,181.29 in costs deducted to be an unreasonable amount given the sales price of $10,500.00. Finally, the debtors have not demonstrated to the court that the post-surrender sales process was conducted in a manner that is not commercially reasonable; the court does not find any indices of unreasonableness on the part of the creditor.

The debtors' remaining two arguments reduce down to the argument that the debtors and other creditors should not be prejudiced by the late filing of an amended claim, when the debtors previously sold their real property to pay off their case in reliance upon a 100% payoff amount calculated prior to the filing of the late claim. The law is clear that amendments of timely-filed

claims are generally allowed after the claim bar date, although it is not a matter of right if it will cause undue prejudice to the debtor or to other creditors. See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380 (1993). See also In re Marohn, 1997 WL 866612 (Bankr. E.D. Va. 1997); In re Sequeira, No. 01-12403-SSM (Bankr. E.D. Va. 2004). Before allowing the late-filed amendment to the timely claim, the court must consider whether the late-filed claim in this case prejudices the debtor or creditors in any way.

Because the creditor's timely filed proof of claim stated that it was fully secured, debtors assert that after surrendering the collateral under a modified plan, the creditor should not be allowed to amend the claim to account for any unsecured deficiency amount, when the amendment comes eleven months after the bar date and more than five months after the date of surrender. The court finds significant the fact that the debtors' own modified plan provided that any creditor to which collateral was surrendered would hold an unsecured claim for a timely filed deficiency claim. Therefore, the modified plan by its own terms, confirmed five months after the bar date, allowed the "timely" filing of such a deficiency claim. The only remaining question is whether the deficiency claim is "timely" enough to be equitably allowed, when it was filed less than six months after plan confirmation and one month after the trustee received a lump sum intended for 100% payoff of all previously-filed unsecured claims.

After reviewing the procedural circumstances of this case, the court has determined that only two types of prejudice could possibly result from the allowance of the late-filed claim. The first type of prejudice would be that unsecured creditors, anticipating a 100% recovery in accordance with the sale order, would be prejudiced by the lower 65% recovery they would receive after allowance of the late-filed claim. Notably, the recovery proposed by the current plan was only 34%, and no unsecured creditors objected to that distribution amount. Likewise,

5

no unsecured creditors have raised the prejudice argument or objected to HSBC's late-filed claim. The court finds no prejudice to unsecured creditors because the terms of the confirmed plan allowed for a timely filed deficiency claim, and the resulting 65% distribution almost doubles the 34% recovery contemplated in the confirmed plan. Further, the deficiency claim was filed prior to the trustee's distribution of the sale proceeds, so no funds must be recovered from other unsecured creditors. The court holds that, given the circumstances in this specific case, the deficiency claim will not be disallowed on the basis of prejudice to unsecured creditors.

The second type of prejudice would result if the trustee required the debtors to complete either a 36 month commitment period or a 100% payoff on unsecured claims. To accomplish this, the debtors could be required to continue making plan payments until the expiration of the commitment period, or pay the unsecured creditors 100%. When the debtors sold their real property, they believed the sale would pay off their plan at 100%, and they would receive their discharge for completion of their plan. Thus, the allowance of the late filed claim could delay their discharge and force them to continue making plan payments for roughly 18 months more, or pay approximately $15,000.00.

While such payment requirements could result in prejudice to the debtors, the court finds no reason for the trustee to require the debtors to continue paying on this plan that has already distributed 65% to unsecured creditors. The court considers this case ready to close.

To avoid prejudice to the debtors, the court adopts the following resolution of the issues before it. The debtors' objection to the late-filed proof of claim will be overruled, and HSBC's amended claim #24 will be allowed in the accurate amount of the deficiency, $14,406.26. To the extent HSBC has received excess disbursements based on the erroneous $15,215.48 claim, such funds must be returned to the trustee. Finally, the debtors are ordered to file a modified chapter

13 plan accounting for the plan payments, lump sum, and percentage paid to date, with no future payments listed or required. Upon confirmation of this plan, all payments will be deemed completed and debtors will receive their discharge. Accordingly,

IT IS ORDERED that debtors' objection to HSBC's amended claim #24 is OVERRULED, and the claim is allowed as an unsecured claim in the amount of $14,406.26;

IT IS ORDERED that HSBC return to the trustee any excess disbursements received based on an unsecured claim in the amount of $15,215.28; and

IT IS FURTHER ORDERED that debtors file within 10 days a modified chapter 13 plan accounting for all payments and percentage paid to date, and upon confirmation of this plan debtors shall receive their discharge.

SIGNED:

/s/ DOUGLAS O. TICE JR.
DOUGLAS O. TICE JR.
CHIEF UNITED STATES BANKRUPTCY JUDGE

Copy to:

James R. Carpenter Jr., Esquire
The Merna Law Group, P.C.
3419 Virginia Beach Blvd., #236
Virginia Beach, Virginia  23452
*Counsel for Debtors*

Christopher L. Brown
Angela H. Brown
1616 Pocoshock Blvd.
Richmond, Virginia  23235
*Chapter 13 Debtors*

Eric David White, Esquire
Michael T. Freeman, Esquire
Samuel I. White, P.C.
1804 Staples Mill Road, Suite 200
Richmond, Virginia  23230
*Counsel for HSBC Auto Finance*

7

Carl M. Bates, Equire
P. O. Box 1819
Richmond, Virginia  23219
*Chapter 13 Trustee*